May it please the Court, Chief Judge Pryor, Judges Grant, Judge Kidd, my name is Lindsey Barron and along with Jay Strongwater we represent the appellant Marcos Damian who spent 70 months or one-sixth of his life in U.S. Marshal custody waiting for this case to resolve. A delay of this magnitude where the defendant is in custody is unprecedented in this circuit. The delay was through no fault of his own. The primary cause of the delay was the 54 months it took for the lower courts to resolve two motions to suppress that were filed by a co-defendant. I have a few questions on that front. It seems like most of the cases, maybe all, really focus on trying to see if the government was at fault, right? The government in the executive branch, not the judicial branch. This one is a little bit unusual. Do you think that those delays are somehow credited to the government in terms of their obligation to do something to encourage or ask the district court to move the case forward? Or do you think that plays out a different way? I think there are two ways to answer that question. In terms of whether a court's negligence factors against the government, the answer is yes. United States v. Ingram and a bunch of other cases, but Ingram says it most clearly, that the duty to bring a defendant to trial falls squarely on the government and the courts. Now, for argument purposes, the government bears the burden of justifying that delay. It doesn't mean the government has to be at fault. It's justifiable. So overcrowded court dockets ... So the government bears the burden or responsibility of moving the case to trial. That's true, Your Honor. But Judge Grant's question, does it not really does play into whether it weighs heavily against the government or not, right? That's correct, Your Honor. And Doggett makes that clear. That the less justifiable a delay, the more heavily that weighs against the government. So again, cause of the ... We have a multi-defendant conspiracy. You have co-defendants who are seeking delays. Your client asked for continuances as well. It seemed to me that ... And your client did not ask for a severance. It seemed to me that it would be hard to say. That this factor weighs heavily against the government. It weighs against the government, but not necessarily heavily. Is that fair? It's not fair, Your Honor. And the reason why is because Doggett makes this clear. The longer the delay ... The Barker factors are interdependent. And the longer the delay, the more even a neutral reason for that delay weighs increasingly heavily against the government. So as you move down the timeline, that factor weighs more heavily against the government. Now could the ... Does it depend on whether the government is acting, though, in good faith or bad faith? So again, Doggett explains three potential ways to weigh that factor. So if there's bad faith, obviously that weighs heavily against the government. That didn't happen here. A neutral reason weighs against the government. It weighs more heavily against the government the longer the delay. And so to get back to the point about the actions of my client. So he did agree to two continuances in 2017. They were brief. They were so that his counsel could review the discovery. That does not explain the reason for the delay. And that's the ultimate question here. It's a qualitative analysis. We don't just look at the number of times his name appears on the Dockett sheet. What was the real cause? If the primary cause of the delay was three years and nine months that it took for the magistrate judge to rule on the motion to suppress, wouldn't that be a neutral one? That would not ... Certainly not bad faith on the part of the government. It seemed to me that you couldn't weigh that heavily against the government. It would weigh against the  And it weighs, again, Your Honor, increasingly heavily. So a normal amount of time to resolve a motion to suppress. And just to be clear, these motions to suppress are common in multi-defendant drug cases. These are not complex issues. It is inexcusable that it took 54 months total for those two issues to be resolved. And so that period of time alone, the trial could not be scheduled until that was resolved. And because it took so long, that weighs heavily against the government. Now what could have happened to make that last a shorter amount of time? Well, the district court told us in the sentencing hearing that she was acutely aware of how long the magistrate judge was sitting on these motions. She talked to him, but he didn't move any quicker. She had a couple of options. She could have reassigned the case to a different judge. She could have taken the issue away from him and just resolved it herself. In fact, that's what she did with our motion to dismiss. She didn't even let the magistrate judge rule on it. So there is court negligence here, there is no question. And because it took so long, that negligence weighs heavily against the government. Again, not because the government is at fault or because there was bad faith, but because Doggett makes clear that the weight of that factor against the government increases as the delay increases. But the government is also not without fault. So as we pointed out in our brief, our client was willing to plead to being a part of a table, him admitting that his conspiracy caused the death of a co-conspirator, the stash house worker. And that factor came with a 20-year mandatory minimum. Our client refused to admit to that, so we believed we were going to trial, and they would not take that off the table. The reason why I... He ended up, as you've correctly pointed out, not having that 20-year mandatory minimum, not having that responsibility in the end. How does that go? Not too prejudiced to his ability to present his defense, but how should we look at it in that he ended up with the same sentence that he was seeking all along anyway? How does that play into the analysis? Is the court asking me to address the prejudice factor, or why we didn't... Okay, so as to prejudice, so the court knows there are three ways that you can potentially prove prejudice, and obviously if your defense was impaired, that's the most serious. And we can't point to a dead witness. We can't point to evidence that disappeared. And that's not the requirement. And in fact, the Doggett court makes clear that the more heavily the other factors weigh, the less of a requiring of prejudice is even required. What do we do with the fact that he gets credit for the pretrial incarceration on his sentence? That does count towards his sentence, and the main way that we can show prejudice is thanks to the First Step Act. So, had he been allowed to plead earlier to what he eventually did plead to, what the government ultimately agreed to, had he been able to plead to that in 2018 when he was ready to plead guilty, he could have been earning what he is now earning, First Step Act credits to reduce the overall length of his sentence. Instead, that time in pretrial custody is dead time, and he's not getting the benefit of the multiple BOP programs that reform, that educate, that the Bureau of Prisons tell us exist for a reason. Instead, he is rotting in a cell. For his time in pretrial detention in terms of service of his sentence, right? It counts towards his sentence, but that is not relevant for prejudice. The question for prejudice... Several circuits have held that it is. In terms of whether he's serving a longer sentence? Yes. Well, then that way is, I guess, neutral then, because he does ultimately get credit, but my point is that his overall time would be less had he been allowed to plead earlier and earn those First Step Act credits. But Doggett also makes clear that you can show prejudice through lengthy or oppressive pretrial incarceration, and we've got both here. I was going to ask you about that, because we see that phrase in Doggett and several other cases, but I've not come across a case that really builds that out. What do you think is required to show that? Well, let me explain first why we don't see a lot of cases that discuss that. So in the 19 cases cited between us and the defendant, the vast majority of those, all but 5, involve cases where the defendant is not detained. So we've only got 5 cases to look at where the defendant is detained. And in those 5 cases, we've got a period of 18 months, 22 months, 22 months, 23 months, and 39 months. Significantly lower than the length of time here. So the length alone, United States v. Dunn, cited by the defendant, tells us the length of alone can be enough. The length in Dunn was 18 months, which wasn't long enough. Did detention have been any more oppressive than the incarceration he would ultimately serve anyway? Well, and this is anecdotal. I don't have law to back this up. I can tell you that my clients much prefer to be in BOP custody than in pretrial. And the reason why is because when you're sitting at Robert A. Dayton Detention Facility, it is dead time. There are very little work opportunities. There are no educational opportunities. Very little programming. You are rotting and wasting away. If you're at BOP, there's a lot you can engage in to make the time go faster. He's currently at Beaumont F.C.I., which is a low-security prison. The conditions are considerably better than they were at Robert A. Dayton Detention Facility. So qualitatively, the time was more oppressive, Your Honor. On our time before you yield the podium, tell me, so he got credit for the pretrial detention towards his sentence, but you say that there was nevertheless prejudice in terms of potential benefit under the First Step Act. Will you explain that to me again? Sure, Your Honor. So under the First Step Act, if a defendant qualifies, which our client is currently earning First Step Act credit, you can engage in certain programs, certain training courses, some education classes, and you can work off your time day for day. And he was denied that opportunity. So overall, the length he serves will be longer. Thank you, Ms. Barron. You've saved five minutes for rebuttal. Mr. White. Thank you. Good morning. May it please the Court, my name is Eric White and I have the privilege of representing the United States of America. Because the first three Barker factors in this case do not weigh heavily against the government, this is a case about prejudice. I don't think the first factor weighs heavily against the government. Your Honor, the first factor, so under any of the formulations discussed here, there's no denying this is a substantial period of time. The government's calculation, five and a half years, the defendant mentioned 70 months. I mean, number one, that's satisfied. It seems to me the second factor, the government bears the burden of establishing valid reasons for the delay, right? Yes, Your Honor. This is to me kind of the nub of it, whether we get – it affects how we get to prejudice, whether we get to prejudice. Yes, Your Honor. And I will tell you the third factor, it seems to me, he timely asserted his speedy trial right, so that weighs heavily against the government. So it's really, to me, down to the second factor. Yes, Your Honor. One quick point about the first factor. This Court recently held in the Ogeek-Pallor decision that came out at the end of last year that the first factor will not weigh heavily against the government unless the second factor weighs against the government. So to Your Honor's point, this does turn on the second factor. I think the second factor weighs against the government. The question is whether it weighs heavily against the government. Yes, Your Honor. And it does not do so in this case. And to get to the heart of some of the questions that this Court was just asking, there are two cases that discuss judicial delays and how to weigh those. The first is the Supreme Court case, United States v. Loud Hawk. And that was cited in the government's brief on page 21. It was not prominently discussed in that brief, but it bears mentioning here specifically because it answers the Court's question. Loud Hawk, Your Honor, and the citation is 474 U.S. 302. In the Loud Hawk case, there was a 90-month delay, 9-0, and it was caused by two sets of interlocutory appeals. The first interlocutory appeal took 46 months from notice of appeal to mandate. The second took 29 months from notice of appeal to mandate. Was the defendant detained during that time period? Not during the first because the first ultimately was part of the issue on appeal was whether the indictment had been dismissed improperly. So the defendant was actually released for part of the first one. But the second one, there was detention for a period of time. It seems to me that that is a really important differentiating factor between this case and most of the others. Pretrial detention makes a delay, I would say, infinitely more oppressive in terms of the denial of liberty for years and years. What's your response to why this case isn't different than most of the ones that you cite? Your Honor, the pretrial custody is particularly relevant when thinking about the prejudice factor here. And because the first three factors as a whole don't weigh heavily against the government, the defendant is under a burden to demonstrate that actual prejudice took place here, that the defendant suffered actual prejudice. And that showing was just not made in the district court. And when it comes to addressing the idea of pretrial custody or custody in general, Your Honor was correct previously that there are not many cases discussing this. There are two. The Dunn case as well as the Ogeek-Palore case, it is discussed very briefly. But the Dunn case held that the pretrial custody did not, or the oppressive pretrial custody means of achieving actual prejudice was not satisfied because there was no showing that the custody rose to the level of a constitutional violation. The Ogeek-Palore decision from December of last year comes to a similar conclusion. There's not much analysis in either of those about why. It's difficult to see why, and I think those two cases are different than this one, including in length of time. And no one has really addressed, I think, the points that Justice Thomas raised about the original reason for the Sixth Amendment speedy trial protection was not about prejudice to the defense. It was about the risk of pretrial confinement. Isn't that correct? That is correct, and that was one of the initial things discussed by the Barker Court. But that also makes it clear, it really makes it more important that in certain circumstances that the defendant be required to demonstrate that he experienced this actual prejudice. The problem is that the modern remedy for this is the dismissal of the indictment, whereas at the founding, the remedy would have been released from pretrial detention. Yes, and that's exactly why this Court and even the Old Fifth Circuit has said on a couple different occasions that the actual prejudice demonstration requirement should not be dispensed with lightly, and that's because the remedy is so severe. And so jumping back to the Loud Hawk case, when the Supreme Court was weighing those judicial delays from the interlocutory appeals, specifically on the reason for delay factor, the Court held that it was the result of overcrowded courts, and it was neutral in weight, did not weigh heavily against the government. In addition, in the... In that case, it's not really anyone's quote-unquote fault, right? The courts are overcrowded. There's not time, even if the court wished to work, you know, This Court, no one has said that the delays were because of overcrowded courts. It's just that, for whatever reason, the magistrate judge didn't get around to it. That seems to me to be qualitatively different than court crowding, or even than some of the cases we've had for COVID, where courts were not able to function in their ordinary ways for some period of time. And two points to address Your Honor's question. The dissent in the Loud Hawk case was very critical that the Court could have gotten to these interlocutory appeals sooner. In particular, the second 29-month interlocutory appeal was an expedited appeal, and the dissent was very pointed about its criticism of the Ninth Circuit and how long it took. But there is record evidence here as well that the Court was overburdened. And in particular, I'm talking about what the district court said at the sentencing hearing. The district judge informed the parties that she had spoken to the magistrate judge and that he was, quote, very busy. And in addition, during the three-and-a-half-year period where the motions to suppress were pending, it's also important to recall that there was a 14-month span right in the middle of that where the COVID-19 protocols were in place. Doesn't that work against you, though? During the COVID-19 protocols, they weren't actually having trials. You're not dealing with a district court that was busy with a trial docket and so forth. So the judge would have even more time to resolve these issues. And frankly, I looked at the motions to suppress. I didn't find it to be terribly complicated. So your opposing counsel pointed out a number of things that could have been done to move this along. I think that makes it different from an interlocutory appeal where you can ask the court to move faster. But there seem to be a lot of other ways that the court could have moved this along. So why didn't the government encourage the court to do so, given the government's burden? Yes. Well, the first point I'd like to make in response is that under the Bagot case in this court, this court said that the government's burden under the Sixth Amendment is to prosecute its case with reasonable diligence and in good faith. And the court in that case was also clear that the government is not required to exhaust all possible conceivable options. And so the question then becomes when looking to the government conduct during that timeframe, even understanding that more could have been done, was the government being reasonably diligent? And that's also what the Supreme Court in Doggett said when the Supreme Court stated that the eight-and-a-half-year delay there would not have been a speedy trial claim had the government pursued its case with reasonable diligence. And here, during that three-and-a-half-month time period, when the motions to suppress were pending, the government was doing so. There were multiple changes of plea hearings. Remember, this is... Three-and-a-half months? You said that it was pending for three-and-a-half months? Years, Your Honor. I'm sorry. Three years and nine months, I believe, actually. But the government's conduct during that timeframe was reasonably diligent. This was a six-defendant conspiracy. There were multiple change of plea hearings, sentencing hearings. The defendant's first speedy trial act brief was also briefed during this timeframe. In addition, another defendant had filed motions to suppress that were briefed by the government. So when thinking about what more could have been done, the question is, did the government carry its Sixth Amendment burden to be reasonably diligent and prosecute the case in good faith? And the answer to that question is yes. How much longer than three years and nine months would still be reasonably diligent? Is Your Honor asking at what point in time should the government have intervened? Right. I don't have an answer to that question. I don't think that the Barker Court draws bright-line rules for speedy trial claims, particularly because this is such a fact-intensive analysis. Is there a length of time at which the government should have intervened? The answer to that question is probably yes. But when looking to what actually happened and what the government did do during that three-and-a-half years here, the government was prosecuting its case with reasonable diligence against all six defendants. And because the reason for delay does not weigh heavily against the government, nor in the government's opinion do the other factors weigh heavily against the government, the defendant here was required to demonstrate actual prejudice, and the defendant did not do so here. The briefing doesn't truly contest this point. The defendant asks for a presumption based on the concurrence in the Barker, the Supreme Court's case in Barker, as well as the reasoning of Doggett. That is not consistent with the law of this circuit. The defendant here was required to make a demonstration of actual prejudice, and the defendant did not do so. We don't have, at least in my view, a case that deals with a situation like this, where there may not have been any prejudice to the person's defense, but they were subject to very lengthy pretrial detention. We don't have any case that I've seen setting out a standard for what makes that constitutionally impermissible. What would you suggest as a rule? Do you think it's limited to prejudice to the person's defense, or do you think in some world a significant amount of pretrial detention would be enough? Your Honor, in some world, an amount of pretrial detention could be enough on its own. And I think, and again, Your Honor's correct, there is very limited authority on this point. I think the Dunn case makes that clear when they require or state that a demonstration that the pretrial incarceration somehow rose to a constitutional violation. But the somehow is the problem, right? Yes. Somehow. When are we going to see what the somehow means? And why wouldn't pretrial detention of this length and extent be that somehow? Well, in this case, there's a couple different reasons. First is because the defendant did receive full credit for the time he received in pretrial custody. The defendant's briefing states that he always intended to plead guilty to a crime that was going to have a 10-year mandatory minimum. So that encompasses the entirety of the well over five years that he spent in pretrial custody. Tell me about her argument about the benefits of the First Step Act that he lost. Was there a record made of that? And what can or should we say about that? Your Honor, to my knowledge, there is no record made about benefits that were lost. And it is the defendant's burden to demonstrate actual prejudice. But I do want to highlight one thing. It was during the COVID pandemic, so it's not entirely clear to me that he would have been able to participate in those programs. That sounds correct, Your Honor. And in addition, I do want to highlight that the defendant did file a motion for bond in this case, where the defendant made representations about the freedoms that he had while in pretrial incarceration, including the fact that he had a job that allowed him to leave the prison building. And so there are some, that is in the record, that is the motion for bond. I do not have the docket number in front of me, but it was immediately before the third superseding indictment was returned. And so right before this case was dismissed. So because the government, or excuse me, the defendant bears that burden to demonstrate actual prejudice, and it did not do so here, the speedy trial claim fails. And unless there are further questions from the court, the government will. What's your response to the points that Justice Thomas raises about the reason for the speedy trial right in the Sixth Amendment? How do our cases account for that, if at all? In particular, about oppressive pretrial incarceration, I don't know that the Eleventh Circuit cases truly grapple with that point in a way that it might have to in this case. But I would point this Court to the Fifth Circuit. There's a 2020 case, United States v. Duran-Gomez. That's 984 F. 3rd, 366. And that's a case where there was nine years of pretrial incarceration. The court there found that there was no actual prejudice demonstrated and that the speedy trial claim failed. You know, the problem, it seems to me, with what Justice Thomas has raised is that the modern remedy – well, the modern case law assumes that the prejudice is prejudice to the defense, as opposed to just the protection against excessive pretrial detention, which was the concern at the founding, which is why at the founding, a speedy trial violation would have led to release from pretrial detention, but not dismissal of the indictment. But today, we do the opposite. Yes, and I see that now my time is up, Your Honors. Thank you for your time. The government yields. Okay, thank you. Thank you, Your Honor. I want to point out what I pointed out in our reply brief to the government's comment that our demonstration of prejudice is only a conclusory, that there is no record. I want to remind the Court that we asked for an evidentiary hearing when we filed our motion to dismiss so that we could create a record. That opportunity was not given. I don't remember if the government specifically opposed that request or not. Did you earlier concede in your opening that you can't point to any prejudice to the defense because there's no witness loss or anything like that? Absolutely. We were never going to be able to prove prejudice to our ability to defend. But in terms of the conditions of confinement and the length of delay, so the government relies primarily on three cases where a defendant was detained at least part of the time to show that the length was not oppressive. And it first talked about Loud Hawk. And remember the government said that only in a portion of the second portion, after the second interlocutory appeal, was the defendant detained. That period was 29 months. In Dunn, cited by the government, that period was 18 months. And in Dunn, the government said this court found that it was not an oppressive length of time. But again, 18 months is materially different than 70. And so in Dunn, the court said that that third dogged factor could be satisfied by length or oppressive. Eighteen months was not long enough to trigger concern there. And then finally, the government cited to the more recent case, I think it's from December in 2022, of the Ogeek-Palour, and I apologize if I'm mispronouncing it. That defendant was in custody for 22 months, less than a third of what was served here. So those are not dispositive of whether our client, under these facts, suffered a lengthy and or oppressive period of pretrial release. What do you think would be the answer if he had, under the test the government sets out, do you think the answer is any different if he ultimately had prevailed at trial, right? If the defense was not hampered at all by this pretrial detention, under the test the government is laying out, do you think that the answer would be any different if he had escaped a further sentence? You mean if he had been acquitted at trial? I mean, there would still be prejudice, but there wouldn't be a vehicle for raising a speedy trial claim at that point. There's no remedy. There's no conviction to overturn. And so I don't, I don't, maybe I'm just not being creative enough. I can't think of how that would become a ripe question for the court to resolve. But the government also talked about how diligent it was in prosecuting this case. And I have never claimed that the government acted in bad faith. This was negligence on the part of the court. And as Your Honor pointed out, in Loud Hawk, we're in a very different posture. Interlocutory appeals take however long they take. This is an unusually lengthy period of time that the district court was acutely aware of and did nothing to exercise diligence. Now, should the government have done more? I think there's a lot the government could have done. They ask us why we didn't ask for a severance, but the real question, government, is why didn't you? You're the one with the burden to bring my client to trial in a timely manner. In terms of... We said many times there are good reasons in a conspiracy case why you want a joint trial. I mean, I understand why the government didn't do that. Absolutely. I mean, it's certainly, as a former prosecutor, you certainly want to try the case one time and with everybody together. But when you've got, when your conviction is at risk, the government has an obligation to protect the integrity of the court proceedings and to protect its conviction. And so that's a question. Why didn't the government act? And so, again, as Doggett tells us, it is not a satisfactory result to think about dismissing an indictment or to reverse a conviction. It feels counter-instinctual, right, especially where a defendant has pled guilty. But as Doggett makes clear, and I'm quoting here, it is the only possible remedy when there is a constitutional violation. The district court erred in not granting our motion to dismiss, and we ask this court to overturn the conviction. Thank you. Thank you, Ms. Barrett. We are going to move on to our second.